UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TOMAS AHMED CASTANEDA VALDIVIA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:26-cv-00185-MPB-MG |
| ) | |
| MARKWAYNE MULLIN Secretary, Department ) | |
| of Homeland Security, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR A WRIT OF HABEAS CORPUS**

Tomas Castaneda Valdivia is detained at the Clay County Jail at the direction of federal

immigration authorities. He filed a petition for a writ of habeas corpus, arguing that his detention

is unlawful because the government is not significantly likely to carry out his final removal order

in the reasonably foreseeable future.

The Court denies Mr. Castaneda Valdivia's petition insofar as it declines to order his

immediate release. However, the Court grants the petition to the extent it orders the respondents

to provide Mr. Castaneda Valdivia an opportunity to be heard regarding his redetention.

**I. Facts**

Mr. Castaneda Valdivia, a native of Cuba, entered the United States by crossing the

Rio Grande near Paso del Norte, Texas, in May 2019. Dkt. 13-1 at 2. He was apprehended by

immigration officials and placed in removal proceedings. *Id.* He was ordered removed, and his

administrative appeal was denied on July 13, 2020. *Id.*

Mr. Castaneda Valdivia remained detained until November 20, 2020. *Id.* At that time, he

was released subject to an order of supervision. *Id.*

Mr. Castaneda Valdivia appeared for a supervision appointment on March 10, 2026, and was taken into custody. *Id.* He was given a notice that his order of supervision was revoked so that he could be removed to Mexico. Dkt. 13-2 at 1–2. It is undisputed that Mr. Castaneda Valdivia opposed his removal to Mexico, that he cannot be lawfully removed to Cuba, and that the government has not yet identified another third country that will accept Mr. Castaneda Valdivia.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Castaneda Valdivia argues that his continued detention violates the Constitution and laws of the United States in two ways. First, he argues that his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001), because his removal is not likely to occur in the reasonably foreseeable future. Second, he argues that the government did not abide by its own procedures for revoking his order of supervision.

### A.    Section 1231 and *Zadvydas*

Any authority to detain Mr. Castaneda Valdivia must come from 8 U.S.C. § 1231, which authorizes detention of certain noncitizens subject to final removal orders. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen

2

within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien," the Supreme Court wrote in *Zadvydas*, "would raise a serious constitutional problem." 533 U.S. at 690. This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

**1. Jurisdiction**

The respondents begin by arguing that 8 U.S.C. § 1252(g) deprives this Court of jurisdiction to grant the relief Mr. Castaneda Valdivia seeks. This argument is not well-taken.

Section 1252(g) plainly states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." And the Supreme Court plainly stated in *Zadvydas* that, notwithstanding § 1252(g), "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." 533 U.S. at 688. A noncitizen subject to a final removal order can seek release from detention without challenging the underlying removal order or efforts to execute it.

Mr. Castaneda Valdivia seeks only release from detention through his petition and asks for no relief from his removal order or the government's efforts to execute it. Dkt. 10 at 13. Nevertheless, the respondents state: "Here, although the Petitioner claims not to be challenging his removal order, he is attempting to bring a back-door challenge to it by seeking extra-statutory procedures from this Court." Dkt. 13 at 5. But the respondents do not identify those back-door challenges or what procedures Mr. Castaneda Valdivia requests other than release from custody. The respondents' jurisdictional defense, therefore, fails.

### 2. Removal Period

The respondents next argue that Mr. Castaneda Valdivia's detention is lawful because he "was detained on March 10, 2026, and has not been held for longer than the 90-day mandatory removal period since his re-detention." Dkt. 13 at 6. To the extent the respondents ask the Court to find that Mr. Castaneda Valdivia's detention is mandatory because he is within § 1231(a)(1)'s removal period, this argument also is not well taken.

Nothing in the text of § 1231(a)(1)(B) indicates that the removal period begins when detention begins, and the respondents offer no authority to that effect. In this case, the removal

4

period began when Mr. Castaneda Valdivia's removal order became administratively final—that is, when the Board of Immigration Appeals denied his appeal in *July 2020*. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021). Mr. Castaneda Valdivia's removal period ended more than five years ago. Any implication that Mr. Castaneda is subject to mandatory detention because he has been detained for fewer than 90 days is plainly incorrect.

### 3.  *Zadvydas*

Mr. Castaneda Valdivia asks the Court to find that he is entitled to release because he has been detained cumulatively for more than six months since his removal order became final and that his removal is not significantly likely to occur in the reasonably foreseeable future. For two reasons, the Court does not share Mr. Castaneda Valdivia's appraisal. There is no dispute that he cannot be removed to Cuba. Likewise, there is no record before the Court that the government has made documented efforts to remove him beyond notifying him of its intent to remove him to Mexico.

The record reflects that Mr. Castaneda Valdivia has not yet been detained for six months after his removal order became final, even aggregating his terms of detention. According to the government's I-213 record and a declaration from an immigration official, the BIA denied Mr. Castaneda Valdivia's administrative appeal on July 13, 2020. Dkt. 13-1 at 2. Dkt. 13-3 ¶ 4. Mr. Castaneda asserts in his reply brief that his removal order became final on February 20, 2020, and cites the same I-213 document. Dkt. 16 at 5. However, the only reference to that date is the unexplained line: "Final Order: 02/20/2020." Dkt. 13-1 at 2. The factual basis for that entry is not clear. As a matter of law, however, Mr. Castaneda Valdivia's removal order could not have become administratively final until the BIA completed its review. *Guzman Chavez*, 594 U.S. at 534–35 (2021). The only evidence of the BIA's decision indicates that it was issued on July 13, 2020.

Mr. Castaneda Valdivia was detained from the finalization of his removal order on July13, 2020, until his release subject to orders of supervision on November 20, 2020—a total of four months and seven days. Mr. Castaneda Valdivia has now been detained since March 10, 2026—currently, a total of a month and 13 days. Cumulatively, then, Mr. Castaneda Valdivia has been detained for five months and 20 days.

Mr. Castaneda Valdivia correctly notes that the record lacks evidence of efforts to remove him since he opposed his removal to Mexico. If his detention exceeded *Zadvydas*'s six-month period of presumptively reasonable detention, perhaps the absence of evidence of demonstrable removal efforts would persuade the Court that removal is not reasonably foreseeable. At minimum, Mr. Castaneda Valdivia's argument would shift the burden to the respondents to demonstrate that removal is reasonably foreseeable. But the fact that removal prospects are not clear from the record does not mean that there are none. Moreover, the purpose of the presumption is to recognize "necessary Executive leeway" and "limit the occasions when courts will need to make" difficult judgments in an area of primarily executive branch decision-making. *Zadvydas*, 533 U.S. at 700–01.

*Zadvydas* created an analysis that necessarily changes as the length of detention increases and efforts to remove ebb and flow. Mr. Castaneda Valdivia may renew his challenge when changed circumstances would warrant a different outcome. For the moment, his detention is presumptively reasonable, and he has not overcome that presumption.

**B.      Revocation of Supervision**

Mr. Castaneda Valdivia argues in the alternative that he is entitled to release because the government has not abided by its own policies for revoking his order of supervision and redetaining him. The relevant procedures are codified at 8 C.F.R. § 241.4(*l*) and § 241.13(i).

Section 241.13(i)(2) and (3) prescribe the process the government must follow when it "determines that there is a significant likelihood that" an alien previously granted supervised release "may be removed in the reasonably foreseeable future."

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. *The Service will conduct an initial informal interview* promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien *may submit any evidence* or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphases added).

"Thereafter, if the alien is not released from custody following the informal interview," the alien is subject to the process provided for in § 241.4. 8 C.F.R. § 241.13(i)(2). Section 241.4(*l*) deals with revocation of supervised release more broadly and specifies who may revoke supervised release, and on what basis, and what notice and process the noncitizen must receive.

Mr. Castaneda Valdivia received a notice that his release was revoked because the purpose of his release had been served and the government was seeking to remove him to Mexico. Dkt. 13-2 at 1. For the reasons noted in the previous section, the Court presumes at this stage that the government properly determined that he could be removed in the reasonably foreseeable future. However, there is no documentation that Mr. Castaneda Valdivia received an informal interview following his redetention or any of the additional process provided for in § 241.13(i) or § 241.4(*l*).

The Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is:

A. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B. contrary to constitutional right, power, privilege, or immunity; [or]

C. in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *6–7 (W.D. Ky. Sept. 4, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. . . . ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights.").

The record indicates that the government has not afforded Mr. Castaneda Valdivia all the process that he is due under the applicable regulations. That leaves only the selection of a remedy for the violation. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). But, in habeas, as in every other area of the law, "the remedy should be appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). In this case, the government has statutory authority to detain Mr. Castaneda Valdivia. The government has wronged him by failing to observe the complete process for revoking his release and redetaining him. Rather than order his immediate release, the Court finds it prudent to afford

8

the government to *immediately* afford him the process he was owed in the beginning and release him if it cannot do so in the time provided.[1]

### IV. Conclusion

To the extent the petition seeks immediate release based on § 1231(a)(6) and *Zadvydas*, it is **denied without prejudice**. To the extent it seeks relief based on the APA and *Accardi*, it is **granted in part**. The respondents will have **through May 8, 2026**, to file documentation that they have provided the notice, interview, and revocation review required by 8 C.F.R. § 241.13(i). If they cannot do so in the time provided, they must release Mr. Castaneda Valdivia subject to his most recently applicable conditions of supervision. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Dated: April 23, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

---

[1] If the Court ordered Mr. Castaneda Valdivia's immediate release, there would be no apparent barrier to the government properly revoking Mr. Castaneda Valdivia's order of supervision and redetaining him. It is more sensible, therefore, to order the government to comply with its regulations and release him if it cannot timely do so. *See Waller*, 467 U.S. at 50 ("If, after a new suppression hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest."); *see also Jackson v. Denno*, 378 U.S. 368, 393–94 (1964) ("New York . . . should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence."); *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Even if Petitioner could establish that Respondents violated their OSUP revocation procedures, the Court finds that Petitioner's release from detention . . . would not be appropriate. . . . Instead, the Court could order Respondents to provide Petitioner with a new Notice signed by the appropriate official and afford Petitioner a more robust interview. "); *Doe v. Bondi*, 2:25-cv-00480-MPB-MJD, dkt. 27 (S.D. Ind. Oct. 27, 2025) (reaching same result).

Distribution:

Jose A. German
Indiana Federal Community Defenders
jose_german@fd.org

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov